IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

RATIO CHRISTI OF KENNESAW STATE UNIVERSITY, and ZACHARY BOHANNON,

*Plaintiffs,*

v.

SAMUEL S. OLENS, Former President of Kennesaw State University, in his individual capacity; W. KEN HARMON, Interim President of Kennesaw State University, in his official capacity; JEFF MILSTEEN, Vice President and Chief Legal Officer of Kennesaw State University, in his official and individual capacities; KATHLEEN C. WHITE, Vice President for Student Affairs of Kennesaw State University, in her official and individual capacities; MICHAEL SANSEVIRO, Associate Vice President and Dean of Students of Kennesaw State University, in his official and individual capacities; RONALD LUNK, Assistant Dean of Students for Student Life of Kennesaw State University, in his official and individual capacities; ED BONZA, Director of Student Activities of Kennesaw State University, in his official and individual capacities; ANDREW HARVILL, Associate Director of Student Activities of Kennesaw State University, in his official and individual capacities; JORDYN CLARK, Coordinator of Student Organizations of Kennesaw State University, in her official and individual capacities; TIFANEY MILLWOOD, Coordinator of Student Activities of Kennesaw State University, in her official and individual capacities; JANICE MALONE, Reservation Specialist of Kennesaw State

Case No. _____

JURY TRIAL DEMANDED

1

University, in her official and indi-
vidual capacity; and **RACHEL PATTI**,
Reservation Specialist of Kennesaw
State University, in her official and
individual capacities,

*Defendants.*

## VERIFIED COMPLAINT

Plaintiffs Ratio Christi of Kennesaw State University and Zachary Bohan-
non, by and through counsel, and for their Verified Complaint against Defend-
ants, hereby state as follows:

### INTRODUCTION

1.    The cornerstone of higher education is the ability of students to par-
ticipate in the "marketplace of ideas" on campus. That marketplace depends
on free and vigorous debate between students—debate that is spontaneous,
ubiquitous, and often anonymous—and is carried out through spoken word,
flyers, signs, and displays. But at campuses throughout the country, this mar-
ketplace of ideas is under attack. All too often, university officials—including
those at Kennesaw State University ("University" or "KSU") seek to silence or
restrict those who express ideas to which they object, using a myriad of differ-
ent university policies to effectuate this censorship.

2.    Seeking to participate in this marketplace of ideas, Plaintiff Ratio
Christi of KSU sought to conduct a pro-life display on campus in 2016 and 2017
to prompt dialogue with students and faculty on the issue of abortion. Both
times, it sought to reserve a location on the Campus Green that countless stu-
dent organizations have used for similar expressive activities, a location that
allows passing students and faculty to see the displays and to interact easily

with the Ratio Christi members staffing them. But both years, Defendants did not approve Ratio Christi's request and instead relegated its displays to a "speech zone" that comprises less than 0.08% of KSU's 405-acre campus, where Ratio Christi was further removed from its intended audience than it would have been in the zone that was requested. They did this after reviewing the content and viewpoint of Ratio Christi's display and after labeling the overall displays "controversial."

3.    In so doing, Defendants enforced their *Speech Zone Policies*. Under these policies, Defendants prohibit individual students from reserving space on campus and require registered student organizations ("RSO") to submit reservation requests between three and thirty days in advance (depending on the type of event, without clearly indicating which deadline applies). These policies give KSU officials unbridled discretion, both over whether to grant, deny, or modify an RSO's reservation request and over whether and how much to charge in security fees, and they quarantine any expressive activities KSU officials deem "controversial" to the small, less accessible "speech zone." And these policies have been confirmed, vindicated, and defended at the highest levels of KSU administration, including by Defendant Olens.

4.    Defendants took these actions because of the content and viewpoint of Plaintiffs' expression. In taking these actions, they implemented the challenged University policies, violated Plaintiffs' constitutional rights, and inflicted irreparable injury upon them.

5.    This action is premised on the United States Constitution and

concerns the denial of Plaintiffs' fundamental and clearly established rights under the Free Speech Clause of the First Amendment, the unconstitutional conditions doctrine, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## JURISDICTION AND VENUE

6.    This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorney's fees under 42 U.S.C. § 1988.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PLAINTIFFS

10.    Plaintiff Zachary Bohannon is a current, full-time student at KSU.

11.    Mr. Bohannon transferred to KSU in the fall of 2016 and has remained a student at KSU for every semester since then.

12.    Mr. Bohannon is a member of Ratio Christi of KSU and currently serves as the group's secretary and reservation delegate.

13.    Mr. Bohannon desires to engage in expressive activities for himself and

through Ratio Christi. If KSU policies permitted him to do so, he would reserve space on campus as an individual to express his views on a variety of subjects.

14.    Plaintiff Ratio Christi of KSU ("Ratio Christi") is an RSO at KSU.

15.    Ratio Christi is a Christian apologetics club whose purpose is "to encourage and strengthen the faith of Christian students . . .  while sharing Christ's message and love with those who have not yet accepted Him."

16.    Ratio Christi seeks to discuss "culturally relevant issues related to history, science, philosophy, and theology and ask how they pertain to a biblical worldview and the truth of Christianity." It also seeks to "encourage all students and faculty to interact with Christian thinkers on an objective, intellectual basis."

17.    Ratio Christi promotes the intellectual development of students who share an interest in Christian beliefs and want to be able to defend and discuss their beliefs and the beliefs of others in an intellectual manner by giving the historical, philosophical, and scientific reasons for following Jesus Christ.

18.    Ratio Christi expresses its message on KSU's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about Christian beliefs and how they impact various social, moral, cultural, and ethical matters, among other things.

19.    When engaging in their respective expressive activities, Plaintiffs discuss or desire to discuss political, religious, social, cultural, and moral issues and ideas.

20.    Part of Ratio Christi's mission is to be an expressive student organization at KSU and to protect its members' constitutional rights on campus.

21.    If Ratio Christi succeeds in this lawsuit, it and its members will be able to conduct expressive activities in the public fora of campus without having to comply with arbitrary restrictions, without exposing themselves to potential fees, and without having to modify their expression to access those fora.

22.    Ratio Christi brings this suit on behalf of itself as an RSO at KSU and on behalf of its individual student members.

### DEFENDANTS

23.    Defendant Samuel S. Olens was the President of KSU during all times relevant to this Complaint until February 14, 2018.

24.    Defendant W. Ken Harmon is the Interim President of KSU, having assumed that position on February 14, 2018.

25.    KSU is part of the University System of Georgia and receives funding from the State of Georgia to operate.

26.    As president and interim president of KSU, respectively, Defendant Olens was and Defendant Harmon is the chief executive and administrative authority of KSU.

27.    During their respective tenures in office, Defendants Olens' and Harmon's authority and powers include(d) oversight and control of KSU.

28.    During their respective tenures in office, Defendant Olens' duties included and Defendant Harmon's include, among others, authorizing, executing, enforcing, and implementing the policies governing students at KSU and

6

overseeing the operation and management of KSU.

29.    While president of KSU, Defendant Olens directly oversaw Defendants Milsteen and White, and as interim president Defendant Harmon now does so.

30.    While president of KSU, Defendant Olens had the responsibility for final policymaking authority concerning students at KSU, and as interim president, Defendant Harmon now has this responsibility.

31.    During their respective tenures in office, Defendant Olens possessed and Defendant Harmon now possesses the authority and responsibility for coordination and approval of student expression on campus.

32.    When he was president of KSU, Defendant Olens was aware of the content and viewpoint discrimination authorized by and occurring under the challenged policies and did not instruct KSU personnel, including the other Defendants, to change or alter those policies or related practices to comply with constitutional mandates.

33.    As president, Defendant Olens had the authority to review, approve, or reject the decisions of other University officials, including the other Defendants, regarding the policies challenged herein, and Defendant Harmon, as interim president, now has this authority.

34.    Defendant Olens authorized, approved, and implemented the policies that are challenged herein and that were used to restrict Plaintiffs' expression.

35.    Defendant Olens confirmed, sanctioned, and ratified KSU officials' application of the policies challenged herein, specifically Defendants' *Speech*

*Zone Policies*, to students in a viewpoint and content discriminatory fashion.

36.    Defendant Jeff Milsteen is, and was at all times relevant to this Complaint, the Vice President and Chief Legal Officer of KSU.

37.    Defendant Milsteen is responsible for enforcement of the policies challenged herein by KSU employees.

38.    Defendant Milsteen is responsible for ensuring that all operations of KSU comport with law.

39.    All changes in campus policy concerning expressive activity are made only with the prior consultation and approval of Defendants Olens (when he was president), Harmon (now that he is interim president), and Milsteen.

40.    Defendant Kathleen C. White is, and was at all times relevant to this Complaint, the Vice President of Student Affairs at KSU.

41.    Defendant White is responsible for overseeing KSU's Department of Student Life, and in this capacity, she oversees Defendants Sanseviro, Lunk, Bonza, Harvill, Clark, Millwood, Malone, and Patti. She is thus responsible for creating, reviewing, changing, authorizing, and enforcing the policies of that department, including the policies challenged herein.

42.    Defendant White authorized and sanctioned the application of the policies challenged herein to students and RSOs in an unconstitutional manner.

43.    Defendants Olens possessed when he was president, and Defendants Harmon, Milsteen, and White each possesses the authority to change the policies challenged herein to comply with constitutional mandates, but they have neither changed these policies nor instructed any KSU employees to change

them to comply with constitutional requirements.

44.     Defendant Michael Sanseviro is, and was at all times relevant to this Complaint, the Associate Vice President of Student Affairs and Dean of Students at KSU.

45.     Defendant Sanseviro directs the Department of Student Life which encompasses the officials who review requests to reserve facilities. Specifically, he supervises Defendant Lunk.

46.     Defendant Sanseviro has the authority to direct the application of the policies challenged herein to student speech, as well as the authority to suggest changes to the rules challenged herein.

47.     In their respective positions, Defendants White and Sanseviro have each authorized and sanctioned other KSU officials, including the other Defendants, in applying the policies challenged herein to students and RSOs, including Plaintiffs, in an unconstitutional manner.

48.     In their respective positions, Defendants Harmon, Milsteen, White, and Sanseviro are each responsible for administration and policymaking for the University, including the policies challenged herein, and Defendant Olens had these same responsibilities during his tenure as president.

49.     Defendant Ronald Lunk is, and was at all times relevant to this Complaint, Dean of Students at KSU.

50.     Defendant Lunk, under the direction of Defendants Sanseviro and White, leads the Office of Student Life and directs its creation, review, amendment, and enforcement of policies and procedures concerning student speech

and campus use, including the policies challenged herein.

51.   The Office of Student Life created and enforced the policies challenged herein under the direction of Defendant Lunk.

52.   Defendant Lunk is responsible for overseeing the Office of Student Life and Defendants Ed Bonza and Andrew Harvill and for creating, reviewing, changing, authorizing, and enforcing the policies of that office, including the policies challenged herein.

53.   Defendant Ed Bonza is, and was at all times relevant to this Complaint, the Director of Student Activities at KSU.

54.   Defendant Bonza, under the direction of Defendants Lunk, Sanseviro, and White, leads the Department of Student Activities and directs its creation, review, amendment, and enforcement of policies and procedures concerning student speech and campus use, including the policies challenged herein.

55.   Defendant Bonza is responsible for overseeing and supervising the Department of Student Activities at KSU (including the Reservations Department) and Defendants Harvill, Clark, Millwood, Patti, and Malone, and for creating, reviewing, changing, authorizing, and enforcing the policies of that department, including the policies challenged herein.

56.   Defendant Andrew Harvill is, and was at all times relevant to this Complaint, the Associate Director of Student Life at KSU.

57.   In their respective positions, Defendants Sanseviro, Lunk, Bonza, and Harvill each has authority to recommend changes to the policies challenged herein to comply with constitutional mandates, but they have each failed to

recommend any changes to these policies or to take any steps to remedy the discriminatory application of these policies.

58.   In their respective positions, Defendants Harmon, Milsteen, White, Sanseviro, Lunk, Bonza, and Harvill are responsible for developing, enacting, administering, interpreting, overseeing, implementing, and enforcing KSU policies, including the policies challenged herein, and their application to student speech. Defendant Olens had these same responsibilities when he was president.

59.   All applications of the policies challenged herein were made under the authority of Defendants Olens, White, Sanseviro, Lunk, Bonza, and Harvill, and these policies continue to be enforced through the authority of Defendants Harmon, White, Sanseviro, Lunk, Bonza, and Harvill.

60.   Defendant Jordyn Clark is, and was at all times relevant to this Complaint, the Coordinator of Student Organizations at KSU.

61.   Defendant Clark possesses the authority to supervise Defendant Millwood, Patti, and Malone.

62.   Defendant Tifaney Millwood is, and was at all times relevant to this Complaint, the Coordinator of Student Activities at KSU.

63.   Defendant Millwood possesses the authority supervise Defendants Patti and Malone.

64.   Defendant Millwood authorized and sanctioned the application of the policies challenged herein to student speech.

65.   Defendant Millwood possesses the authority to supervise Defendants Patti and Malone.

66.   Defendant Rachel Patti is, and was at all times relevant to this Complaint, a Reservation Specialist at KSU.

67.   Defendant Janice Malone is, and was at all times relevant to this Complaint, a Reservation Specialist at KSU.

68.   In their respective positions, Defendants Clark, Millwood, Patti, and Malone are responsible for enforcing, implementing, and applying KSU policies, including the policies challenged herein, to students and student organizations.

69.   In their respective positions, Defendants White, Clark, Millwood, Patti, and Malone each possesses the authority to direct the approval or rejection of requests to speak or use campus facilities for student speech.

70.   In their respective positions, Defendants Bonza, Harvill, Millwood, Patti, and Malone each has the authority to interpret and apply the policies challenged herein to students and student organizations.

71.   Each and every Defendant (except Defendant Harmon), independently and in consultation with each other, is responsible for enforcing the policies challenged herein and for their application to Plaintiffs' speech.

72.   Defendants Olens, Milsteen, White, Sanseviro, Lunk, Bonza, Harvill, Clark, Millwood, Patti, and Malone have failed to stop KSU officials, including each other, from applying the policies challenged herein to students and student organizations, including Plaintiffs.

73.   Defendant Olens is sued in his individual capacity for damages resulting from the policies challenged herein.

74.   Defendant Harmon is sued in his official capacity for injunctive and

declaratory relief.

75.    Each and every other Defendant is sued in his or her official capacity for injunctive and declaratory relief and in his or her individual capacity for damages resulting from the policies challenged herein.

FACTUAL BACKGROUND

76.    KSU is a public university organized and existing under the laws of the State of Georgia and receives funding from the State of Georgia to operate.

77.    KSU's main campus is composed of various publicly-accessible buildings and outdoor areas, including streets, sidewalks, open-air quadrangles, park-like lawns, and open spaces where expressive activity will not interfere with or disturb KSU's activities, its campus environment or access to buildings and sidewalks. A true, accurate, and complete copy of two maps of KSU's main campus is attached as Exhibit 1 to this Complaint.

78.    KSU's main campus is approximately 405 acres. A true, accurate, and complete copy of the Google Maps satellite view of KSU's main campus is attached as Exhibit 2 to this Complaint.

79.    For all of KSU's students—and especially for the many who live on campus—KSU's campus is their town square where they socialize and engage in a variety of expressive activities.

**I.    DEFENDANTS' UNCONSTITUTIONAL *SPEECH ZONE POLICIES***

80.    KSU regulates students' expressive activities on campus through a collection of related policies, which will be collectively referenced as Defendants' *Speech Zone Policies*. This collection of policies includes:

- Section VI of Defendants' *General RSO Policies & Guidelines*;

13

- Defendants' *Event Request FAQ*;

- Defendants' *Campus Green Map*;

- Defendants' *Freedom of Assembly Request Policy*; and

- Defendants' *General Information* regarding reservations.

Each of these documents will be discussed in greater detail below.

81.   As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' *Speech Zone Policies* that:

- Prohibit individual students from reserving space on campus. *See infra* ¶¶ 83–86.

- Impose unclear and unreasonable deadlines as to when RSOs must submit a reservation request, requiring them to do so three, five, fourteen, or thirty days in advance, depending on the event. *See infra* ¶¶ 87–97.

- Give KSU officials unbridled discretion to determine which deadline for submitting a reservation request applies to a specific RSO. *See infra* ¶¶ 87–97.

- Grant KSU officials unbridled discretion over whether to grant, deny, or modify reservation requests. *See infra* ¶¶ 98–116, 120–25.

- Give KSU officials unbridled discretion over where RSOs may conduct certain expressive activities. *See infra* ¶¶ 98–125.

- Give KSU officials unbridled discretion over how RSO reservation requests are reviewed and who is involved in that review. *See infra* ¶¶ 120–23.

- Relegate expressive activities KSU officials deem "controversial" to an inferior location they dubbed the "speech zone." *See infra* ¶¶ 117–19.

- Fail to provide a brief, specified period of time in which KSU officials must approve or reject reservation requests. *See infra* ¶¶ 126–29.

- Grant KSU officials unbridled discretion over whether and how much to charge an RSO for security or medical services associated with one of its events. *See infra* ¶¶ 130–35.

82.    Defendants primarily restrict when and where students may conduct expressive activities on campus through Section VI of their *General RSO Policies & Guidelines*. These policies and guidelines are set forth in Defendants' *Registered Student Organization Manual 2017–2018*, a true, accurate, and complete copy of which is attached as Exhibit 3 to the Complaint.

83.    Defendants' *Speech Zone Policies* prohibit individual students from reserving space and hosting events on campus.

84.    Defendants' *Speech Zone Policies* specify that "[o]nly entities affiliated with KSU can reserve space on campus. . . . This includes KSU employees and Registered Student Organizations (RSOs) that are on-file with Student Life." A true, accurate, and complete copy of Defendants' *Event Request FAQ*, which contains this restriction, is attached to this Complaint as Exhibit 4.

85.    Individual students cannot form an RSO by themselves, and thus, are not allowed to reserve space on campus for expressive activities on their own.

86.   Thus, an individual student who simply wants to reserve space on campus for an expressive activity must first form an RSO. To do so, he must join with at least four other students and complete at least seven other requirements. *See, e.g.*, Ex. 3 at 8–9.

87.   To reserve space on campus, RSOs must submit an event space request using the KSU Reservations system, formally called VEMS. *See* Ex. 3 at 20 § IV.a.; Ex. 4 at 1.

88.   Defendants impose a variety of deadlines on RSOs who desire to reserve space on campus.

89.   Under Defendants' *Speech Zone Policies*, "[a]ll space requests must be submitted a minimum of 3–5 business days before the event. Requests submitted less than 3 business days before the event will be denied." Ex. 4 at 2.

90.   But submitting an event space request three business days in advance may not be enough because Defendants' *Speech Zone Policies* state that if an RSO "is making a reservation request less than 5 days before the event date, there is no guarantee that [its] request will be approved." Ex. 3 at 35.

91.   For other events, Defendants require RSOs to submit an event space request at least two weeks in advance.

92.   Defendants' *Speech Zone Policies* state that "[m]ost events, unless they are simple meetings[,] require as much as two weeks to be approved and have access and other details worked out." Ex. 3 at 34.

93.   Defendants also note that "[s]imple meetings . . . may be scheduled up to five business days prior to the meeting." Ex. 3 at 34.

94.    For certain events, Defendants require RSOs to submit their event space requests at least thirty days before the event.

95.    Under Defendants' *Speech Zone Policies*, "[l]arge events (attendance of 50+ people, requires contracts, payments, and/or security presence) should be submitted at least 30 days prior to the event." Ex. 4 at 2.

96.    Elsewhere in their *Speech Zone Policies*, Defendants define "large events" differently, noting that they "may include, but [are] not limited to, the following components:

- Tents
- Inflatables
- Staging
- Catering Exemption Forms
- Special Audio Visual Requirements
- Performances or Bands"

A true, accurate, and complete copy of KSU's *General Information* regarding reservations, which contains this definition of "large events," is attached as Exhibit 5 to this Complaint.

97.    Defendants' *Speech Zone Policies* do not define the operative terms (*e.g.*, "simple meetings," "most events," "large events") in an objective, comprehensive fashion so that RSOs know how far in advance of an event they must submit an event space request, thereby giving KSU officials unbridled discretion to determine which deadline applies to a given RSO request.

98.    When RSOs seek to reserve space for outdoor expressive activities,

17

one of the prime locations on campus is the Campus Green.

99.   Centrally located outside the Carmichael Student Center and the Siegel Student Recreation & Activities Center, the Campus Green abuts one of the main arteries of pedestrian traffic on campus. *See* Ex. 1.

100.   Defendants have divided the Campus Green into seven zones that RSOs and, in some cases, off-campus speakers may reserve for expressive activities. A true, accurate, and complete copy of Defendants' *Campus Green Map*, depicting these zones, is attached as Exhibit 6 to this Complaint.

101.   The optimal location for expressive activities on the Campus Green is Zone 2, which is "the grassy area between the Campus Green and the Student Center" that includes a paved area. Ex. 6 at 1.

102.   Zone 2 is the optimal location because it is located right outside the primary entrance to the Carmichael Student Center and University Stores and because there are no physical impediments between it and the adjoining sidewalks. True, accurate, and complete copies of pictures depicting Zone 2 of the Campus Green are attached as Exhibit 7 to this Complaint.

103.   As a result, expressive activities held in Zone 2 have maximum exposure to passing students, and RSOs holding activities there have maximum opportunity to interact with those passing students.

104.   In contrast, Zones 3 and 4 represent far less effective locations for conducting expressive activities and reaching passing students.

105.   Zones 3 and 4 are located on the north side of the Campus Green and include the "Grill Area" and area between the grills and the Burruss Building.

Ex. 6 at 1.

106.   Zones 3 and 4 are separated from the sidewalk that encircles the Campus Green by hedges, mulch beds, and other impediments. True, accurate, and complete copies of photographs of Zones 3 and 4 are attached as Exhibit 8 to this Complaint.

107.   In addition, Defendants have designated Zones 3 and 4 as the only area that off-campus speakers may use for expressive activities. Therefore, Zones 3 and 4 are commonly referred to as the "speech zone."

108.   The "speech zone" of Zones 3 and 4 constitutes approximately a mere 0.3 acres, and thus it comprises no more than 0.08% of KSU's campus.

109.   Defendants' *Freedom of Assembly Request Policy* specifies that "*[a]ny visiting person or group who desires to use the designated campus area for an assembly or expression*" must submit a request form. A true, accurate, and complete copy of Defendants' *Freedom of Assembly Request Policy* is attached as Exhibit 9 to this Complaint.

110.   Defendants' *Freedom of Assembly Request Policy* further notes that the location of the "designated campus area" for off-campus speakers is the "triangle near the northwest corner of the Campus Green, between the Burruss Building and the Carmichael Student Center (Zone 3/4)." Ex. 9 at 2.

111.   As a result, KSU students presume that any event held in the "speech zone" (*i.e.*, Zones 3 and 4) is sponsored by an entity that is not a legitimate member of the KSU community, and they tend to avoid such events, equating them with people like street-preachers.

112.   In contrast, KSU students know that only RSOs, full-fledged members of the KSU community, can hold expressive activities in Zone 2, and thus, they treat these events with more legitimacy and enthusiasm.

113.   The stigma associated with the "speech zone" arises from the history of that location. Upon information and belief, Defendants created the "speech zone" after an off-campus group engaged in expression that they, other KSU officials, and many KSU students found particularly offensive and distasteful. The goal in creating this zone was to quarantine such speech in one location so that it could be avoided.

114.   When an RSO seeks to hold an event on the Campus Green, it selects which of the seven zones would best suit its purposes.

115.   But as KSU officials review the RSO's event space request, they retain the ability to move the event to a different zone than the RSO selected.

116.   Defendants' *Speech Zone Policies* contain no guidelines, standards, or criteria limiting the discretion of KSU officials in determining whether to move an RSO's event to a different zone on the Campus Green than the one the RSO selected or in determining which zone the RSO will be allowed to use, thereby granting those officials unbridled discretion.

117.   Under their *Speech Zone Policies*, Defendants are authorized to allow RSO events they deem to be "controversial" to use only Zones 3 and 4, even if the RSO requested a different zone (*e.g.*, Zone 2).

118.   Defendant Olens recently reasserted this aspect of Defendants' *Speech Zone Policies*, stating that KSU was screening and would continue to

20

screen student speech. He noted that KSU officials would continue to relegate some content, viewpoints, or organizations to the speech zone.

119.   Defendant Olens emphasized that "certain presentations and organizations will be restricted to the free speech zone."

120.   After submitting an event space requirement, RSOs must wait to "receive the confirmation email in order to officially reserve space for an event on campus." Ex. 3 at 20 § IV.b.

121.   Under Defendants' policies, "RSOs who do not receive an event confirmation email are not permitted to use space they have requested." Ex. 3 at 20 § VI.b; *accord* Ex. 4 at 1.

122.   When an RSO submits an event space request, a "reservationist from Student Life will process the request." Ex. 4 at 1.

123.   Defendants' *Speech Zone Policies* contain no guidelines, standards, or criteria limiting the discretion of KSU officials in determining how an event space request is processed or who is involved in reviewing that request, thereby giving these officials unbridled discretion.

124.   However, an RSO will not receive an event confirmation e-mail until after KSU officials have decided to approve the event space request.

125.   Defendants' *Speech Zone Policies* contain no objective and comprehensive guidelines, standards, or criteria to limit the discretion of KSU officials in granting, denying, or modifying event space requests submitted by RSOs, thereby giving these officials unbridled discretion.

126.   Defendants' *Speech Zone Policies* contain no deadline by which KSU

officials must review and either approve or deny an event space request.

127.   Defendants' *Speech Zone Policies* state that "[m]ost reservation requests will be approved or denied within 5 business days of submission." Ex. 3 at 35.

128.   But Defendants also state that "large events" may require "4–6 weeks for processing." Ex. 5 at 1.

129.   Neither of these policies limit how long KSU officials may review an event space request or require those officials to communicate a decision to the RSO that submitted the request within a brief, specified time.

130.   Defendants also retain discretion to charge RSOs for security at any events the RSO may organize.

131.   Defendants' *Speech Zone Policies* specify that "[s]ome on-campus events hosted by RSOs may be required to provide additional security and/or medical assistance depending on the type, nature, attendance, and logistics of the event." Ex. 3 at 22 § VI.*l*.

132.   Evaluating the "type" and "nature" of the event necessitates evaluating content and viewpoint of the expression in determining whether to require security.

133.   Defendants' *Speech Zone Policies* contain no objective and comprehensive guidelines, standards, or criteria to limit the discretion of KSU officials when assessing whether additional security or medical assistance will be required for a specific event, thereby giving these officials unbridled discretion.

134.   Defendants' *Speech Zone Policies* state that "[t]his additional security

and/or medical assistance may come at a cost to the RSO." Ex. 3 at 22 § VI.*l.*

135.   Defendants' *Speech Zone Policies* contain no objective and comprehensive guidelines, standards, or criteria to limit the discretion of KSU officials when deciding (1) whether to charge an RSO for this additional security or medical assistance or (2) how much to charge the RSO for this additional security or medical assistance, thereby giving these officials unbridled discretion.

136.   Students or RSOs who violate KSU policies (*e.g.*, Defendants' *Speech Zone Policies*) are subject to various sanctions.

137.   Defendants make it clear that "[i]f an RSO or individuals affiliated with an RSO violate KSU policies or protocols, the RSO in question will be sent through the RSO Conflict Resolution process." Ex. 3 at 32.

138.   Defendants, specifically "the Department of Student Activities[,] reserve[] the right to levy any sanction on RSOs (and individuals associated with RSOs) found responsible for misconduct." Ex. 3 at 32.

139.   Possible sanctions include "written warning, suspension of RSO privileges, removal of officers of an RSO, loss of existing reservations and/or funding." Ex. 3 at 33.

## II.   DEFENDANTS' REFUSAL TO CHANGE THEIR UNCONSTITUTIONAL SPEECH ZONE POLICIES

140.   On June 3, 2013, Plaintiffs' counsel sent an informational letter to KSU officials, informing them that KSU maintained and enforced policies that violated the First Amendment rights of students. A true, accurate, and complete copy of this letter is attached as Exhibit 10 to this Complaint.

141.   Among other issues, this informational letter highlighted how

Defendants' *Speech Zone Policies* violate students' constitutional rights and explained at length the policies' constitutional flaws. Ex. 10 at 1, 5–7.

142.   Plaintiffs' counsel offered to assist KSU officials in revising Defendants' *Speech Zone Policies* so that they would comply with the First Amendment in the hopes that "no need for litigation to protect student expression will arise." Ex. 10 at 9.

143.   On June 25, 2013, KSU officials responded, noting that they would review these policies. A true, accurate, and complete copy of KSU's response letter is attached as Exhibit 11 to this Complaint.

144.   After almost a year passed without hearing of any policy changes, Plaintiffs' counsel sent a follow-up letter on June 18, 2014, asking to be informed as to whether KSU, among other institutions, had changed any of the previously highlighted policies. A true, accurate, and complete copy of this follow-up letter is attached as Exhibit 12 to this Complaint.

145.   In the more than three and a half years since that follow-up letter, Plaintiffs' counsel has received no response.

146.   In the more than three and a half years since Plaintiffs' counsel sent that follow-up letter, none of the Defendants have taken any steps to revise their *Speech Zone Policies* to protect and respect the constitutional rights of students but have instead continued to enforce them to limit and curtail student expression on campus.

## III. DEFENDANTS' ENFORCEMENT OF THEIR UNCONSTITUTIONAL *SPEECH ZONE POLICIES*

147.   Defendants have repeatedly used their *Speech Zone Policies* to engage

in viewpoint and content discrimination by moving Ratio Christi's events from the preferred Zone 2 to the "speech zone," thereby impeding Ratio Christi's ability to communicate its ideas to its intended audience.

### A. RATIO CHRISTI'S 2015 DISPLAY

148.   Campus opposition to Ratio Christi's pro-life message began in late 2015.

149.   On October 22, 2015, Ratio Christi sought to reserve space to conduct a pro-life display in order to "foster discussion of current bio-ethical and political issues, particularly those surrounding pro-life issues and support for women in crisis pregnancies" and to "engag[e] people in dialogue." A true, accurate, and complete copy of Ratio Christi's 2015 reservation request, with privileged information and students' contact information redacted, is attached as Exhibit 13 to this Complaint.

150.   The event was held on October 27, 2015. Ratio Christi was using the space it had reserved for its exclusive expressive purposes.

151.   A group of other students who were opposed to Ratio Christi's message sought to interfere with the event by calling the police and falsely alleging that Ratio Christi was acting in an illegal manner.

152.   The police, upon realizing that Ratio Christi was not doing anything out of order and that the situation was the creation of opposition protestors, did not take further action.

153.   KSU, however, subsequently began to single out Ratio Christi and make it more difficult for it to reserve space outside the speech zone, citing

among other reasons the "controversial" nature of Ratio Christi's message.

**B. DEFENDANTS' 2016 ENFORCEMENT AGAINST RATIO CHRISTI**

154.   On February 3, 2016, Ratio Christi sought to reserve space to conduct a pro-life display in order to "foster a respectful campus dialogue on issues involving bio-ethical issues and how they are viewed politically and socially." A true, accurate, and complete copy of Ratio Christi's 2016 reservation request, with privileged information and students' contact information redacted, is attached as Exhibit 14 to this Complaint.

155.   Ratio Christi intended for this display event to highlight the question of whether abortion should be legal and to allow its members to "engag[e] in dialogue with students and faculty who are interested in bio-ethical issues." Ex. 14 at 2.

156.   Because Ratio Christi wanted to engage passing students and faculty in conversation, it sought to reserve Zone 2. Ex. 14 at 3.

157.   Ratio Christi sought to reserve Zone 2 because that location would allow a maximum number of students and faculty to see the display due to its central location and proximity to the primary travel corridors on campus and because that location was a paved patio connected to the sidewalk, thereby giving any interested passersby easier access to the display and the Ratio Christi members staffing it, whereas the "speech zone" is a grassy area that becomes quite muddy during the winter and when it rains.

158.   In addition, Ratio Christi sought to reserve Zone 2 because that is where many RSOs hold events on the Campus Green, and it wanted passing

students and faculty to realize that an RSO existed on campus to foster its views, both so that interested students could seek membership and so that its views would be seriously considered on campus.

159.   Ratio Christi chose not to reserve the "speech zone" in Zones 3 and 4 because those locations are not as centrally located, are not paved, and at that time of the year were quite muddy.

160.   Ratio Christi also chose not to reserve Zones 3 and 4 because it sought to avoid the stigma of the "speech zones" and of being seen as an off-campus entity, knowing that students often view events in those zones as being sponsored by off-campus groups and therefore as being less relevant and legitimate.

161.   As RSOs regularly reserve Zone 2 for expressive activities (including displays that routinely include signs, tents, tables, banners, and inflatables), Ratio Christi's request should not have met with resistance.

162.   But instead of approving the request, Defendant Malone asked Ratio Christi's leaders to come meet with her.

163.   At this meeting, Defendant Malone explained that Ratio Christi's proposed presentation was "controversial." So Ratio Christi could not reserve its selected location (*i.e.*, Zone 2), but could conduct its event in the "speech zone" in Zone 4.

164.   Defendant Malone informed Ratio Christi's leaders that if they would remove certain of their pro-life posters, from the display, she would allow them to utilize Zone 2 as originally requested.

165.   By moving Ratio Christi's display to Zone 4 due to its allegedly

27

"controversial" nature but offering to allow it in Zone 2 if Ratio Christi removed its most prominent posters, which necessarily would change the message, Defendant Malone enforced Defendants' *Speech Zone Policies*.

166.   As Ratio Christi was unwilling to compromise its message by removing the posters, it proceeded to hold its event in the location Defendants made available (*i.e.*, the "speech zone" in Zone 4).

167.   On February 17, 2016, Defendants confirmed that Ratio Christi's display would be permitted in Zone 4. A true, accurate, and complete copy of this confirmation, with privileged information and students' contact information redacted, is attached as Exhibit 15 to this Complaint.

168.   As the result of being forced to use the "speech zone" in Zone 4, Ratio Christi's ability to interact with passing students and faculty was substantially hampered. It appeared to Ratio Christi's members that fewer people may have stopped to engage in conversation due to the inferior location, the mud, and the inherent stigma of being, to all appearances, an off-campus entity. As a result, the event may not have been as successful as Ratio Christi members had anticipated it being if it had been held in Zone 2.

### C. DEFENDANTS' 2017 ENFORCEMENT AGAINST RATIO CHRISTI

169.   On September 15, 2017, Ratio Christi sought to reserve space for another pro-life display in order to "have respectful dialogue with students and faculty regarding the subject of abortion." A true, accurate, and complete copy of Ratio Christi's 2017 reservation request, with privileged information and students' contact information redacted, is attached to this Complaint as Exhibit 16.

170. Ratio Christi planned this display to highlight the question, "Should abortion remain legal?," and to provide "[s]tudents and faculty . . . the opportunity to vote on where they stand and discuss the matter with" its members. Ex. 16 at 2.

171. Ratio Christ chose to use this particular display "to help guide the conversations taking place." Ex. 16 at 2.

172. Once again, Ratio Christi sought to reserve Zone 2 for this event so that it could interact with the maximum number of students and faculty, given its central location and proximity to the sidewalks. In addition, Zone 2 lacks any physical impediments between it and the sidewalks, making it easier to have conversations with passing students and faculty. Furthermore, Ratio Christi wanted students and faculty to view its event as more relevant and legitimate, knowing that it was being held by an RSO.

173. Ratio Christi chose not to request Zones 3 or 4 for all the same reasons it chose not to request them in February 2016. Plus, it knew from experience that events held in Zones 3 and 4 are not effective at reaching students and faculty or in fostering conversations with them, due to the landscaping obstacles between those locations and the sidewalk surrounding the Campus Green.

174. By October 9, 2017, Defendants still had not approved or rejected Ratio Christi's request to reserve Zone 2 for this event, and so Ratio Christi's president e-mailed Defendant Patti to inquire about the status of this request. A true, accurate, and complete copy of this e-mail exchange between Ratio Christi's president and Defendant Patti, with privileged information and students' contact

information redacted, is attached as Exhibit 17 to this Complaint.

175.  On October 10, 2017, Defendant Patti, instead of approving Ratio Christi's request to reserve Zone 2, moved the reservation to Zones 3 and 4. Ex. 17 at 1.

176.  Defendant Patti explained her actions saying, "I did change your location to zones 3/4 because that is our 'free speech' area. . . ." Ex. 17 at 1.

177.  Defendant Patti made it clear that she took this action "due to the nature of your information table." Ex. 17 at 1.

178.  Shortly thereafter, Ratio Christi's leaders met with Defendant Patti to discuss her actions.

179.  At this meeting, Defendant Patti explained that KSU has a speech zone that applies to student expression. Specifically, if KSU officials deem a student event "controversial," they will allow it to take place only in the speech zone in Zones 3 and 4.

180.  Defendant Patti went on to tell Ratio Christi's leaders that if they held their event outside the speech zone, the police would not protect them, and they would be responsible both for their own safety as well as for any campus disruption or damage caused by any hecklers.

181.  As Defendant Patti prohibited it from using Zone 2 for its display, Ratio Christi utilized the only space she made available (*i.e.*, Zones 3 and 4).

182.  As in 2016, because Ratio Christi was forced to use the "speech zone" in Zones 3 and 4, its ability to interact with passing students and faculty was substantially hampered. Fewer people saw the display and fewer still stopped

to converse due to the inferior location, the landscaping obstacles, and the inherent stigma of being, to all appearances, an off-campus entity. As a result, Ratio Christi's purpose for this event was substantially thwarted.

183.   While Ratio Christi conducted its display in the speech zone on October 31 and November 1, 2017, its members observed that their requested space in Zone 2 sat empty and unused the entire time.

184.   Around this time, a member of Ratio Christi discussed KSU's speech zone with Defendant Olens. Defendant Olens informed this Ratio Christi member that KSU did screen and would continue to screen student expression and that at least some speech would be restricted to the "speech zone."

185.   Defendant Olens redoubled his commitment to the *Speech Zone Policies*, saying that "certain presentations and organizations will be restricted to the free speech zone" and that these policies would remain in effect, unless KSU was forced to change its policies by a court decision.

### D. IMPACT OF DEFENDANTS' *SPEECH ZONE POLICIES* ON RSOS

186.   Since October 2017, Ratio Christi has not attempted to reserve space on the Campus Green for any expressive activities.

187.   Ratio Christi desires to reserve space on the Campus Green, specifically Zone 2, for expressive activities at the earliest opportunity.

188.   Ratio Christi desires to reserve space on the Campus Green, specifically Zone 2, for expressive activities without having to comply with arbitrary and unclear deadlines for submitting event space requests, without subjecting itself to potential liability for security or medical assistance, without having to

31

modify its expression lest Defendants deem it "controversial" and thus relegate it to the "speech zone" in Zones 3 and 4.

189.   Since October 2017, Ratio Christi has not attempted to reserve space on the Campus Green, including Zone 2, because KSU policies limit its ability to do so and because numerous KSU officials, including Defendants, have enforced those policies against it to limit its expression.

190.   Defendants' *Speech Zone Policies* and their enforcement of these policies burdens Ratio Christi's speech for multiple reasons.

191.   First, the permit requirement, in and of itself, is unduly burdensome as it requires RSOs to submit an event space request between three, five, fourteen, or thirty days in advance for processing.

192.   If Ratio Christi learns of breaking news and desire to reserve space to share its views about that news promptly with students, Defendants' *Speech Zone Policies* prevent it from doing so.

193.   Ratio Christi, its members, and all students at KSU require the ability to speak spontaneously in reaction to news. Yet, Defendants' *Speech Zone Policies* prevent RSOs from reserving space in a speedy fashion because they force RSOs to obtain a permit before reserving space and to seek that permit days or weeks in advance.

194.   Second, Defendants' *Speech Zone Policies* give KSU officials unbridled discretion to grant or deny event space requests, allowing them to discriminate based on content or viewpoint.

195.   Using this discretion, KSU officials, including Defendants, relegate

speech they deem "controversial" to the tiny, inferior "speech zone."

196.  Third, by requesting to reserve space, Ratio Christi and all other RSOs expose themselves to potential liability for security or medical fees, and Defendants retain complete discretion as to whether or how much to charge.

197.  Fourth, in applying their *RSO Classification Policy*, Defendants treat comparable RSOs dramatically different.

198.  In late October 2017, Defendants permitted Kennesaw Pride Alliance to reserve all seven zones of the Campus Green for its "Pride Day" event.

199.  Ratio Christi finds it controversial that a group would so publicly advertise and promote sexual activities that it and its members believe are immoral and unhealthy, even if the group has a constitutional right to do so.

200.  Defendants did not deem Kennesaw Pride Alliance's event "controversial," and thus, they approved its request to reserve all seven zones of the Campus Green.

201.  Due to the restrictions imposed by Defendants' *Speech Zone Policies* and Defendants' enforcement of these policies, Ratio Christi and its members are chilled in their ability to engage in expressive activities on campus.

202.  Due to the restrictions imposed by Defendants' *Speech Zone Policies* and Defendants' enforcement of these policies, Ratio Christi and its members lack an adequate alternative means of communicating their religious, political, moral, and social views with the students, faculty, staff, and other members of the KSU community that they desire to reach.

203.  If not for Defendants' *Speech Zone Policies* and the actions of

Defendants, Ratio Christi would immediately resume utilizing the areas around the Campus Green, including Zone 2, for expressive activities.

204.   Ratio Christi refrains for fear of punishment, restriction, or censorship under Defendants' *Speech Zone Policies*.

205.   The fear of punishment, restriction, or censorship severely limits Ratio Christi's constitutionally-protected expression on campus.

### E. IMPACT OF DEFENDANTS' *SPEECH ZONE POLICIES* ON STUDENTS

206.   Defendants' *Speech Zone Policies* do not allow individual students to reserve space on campus for expressive activities, as only RSOs can reserve space. *See supra* ¶¶ 83–86.

207.   Mr. Bohannon would like to be able to reserve space as an individual student at KSU to express his personal views on political, religious, social, and ethical matters without having to work through an RSO.

208.   As an individual student, Mr. Bohannon—like all other KSU students—is not permitted to reserve space on KSU's campus for any purpose.

209.   In order for Mr. Bohannon to have the ability to reserve space on campus, Defendants require him to form a student organization, which in turn requires him to combine his message with that of at least four other students and complete at least seven other steps. *See* Ex. 3 at 8–9.

210.   In addition, if an individual student learns of breaking news and desires to reserve space to share his views about that news promptly with students, Defendants' *Speech Zone Policies* prevent him from doing so.

211.   Mr. Bohannon and all KSU students require the ability to speak

spontaneously in reaction to breaking events. Yet, Defendants' *Speech Zone Policies* prevent individual students from reserving space on campus at all, let alone in a speedy fashion.

212.   But for Defendants' *Speech Zone Policies*, Mr. Bohannon would, from time to time, reserve space on campus to express his personal views on a variety of social, cultural, political, moral, and religious issues.

213.   Mr. Bohannon refrains because Defendants provide him no avenue for making such reservations due to their *Speech Zone Policies*.

## STATEMENTS OF LAW

214.   At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Georgia (*i.e.*, under color of state law and authority).

215.   Defendants knew or should have known that by preventing individual students from reserving space on campus for expressive activities, they are violating the constitutional rights of all KSU students, including Mr. Bohannon.

216.   Defendants knew or should have known that that they were violating the constitutional rights of all RSOs, including Ratio Christi by:

- Imposing unreasonable and unclear deadlines on RSOs for submitting an event space requests;

- Granting KSU officials unbridled discretion to approve, grant, or modify reservation requests from RSOs;

- Relegating expressive activities they deem "controversial" to the

inferior location of the "speech zone"; and

- Granting KSU officials unbridled discretion to decide whether and how much to charge RSOs for security and medical assistance in connection with a specific expressive activity.

217. The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in full force and effect.

218. Plaintiffs are suffering irreparable harm from Defendants' *Speech Zone Policies*.

219. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

220. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest.

221. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

222. Unless the policies and conduct of Defendants are enjoined, Plaintiffs will continue to suffer irreparable injury.

223. Under 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' challenged policies and related conduct.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiffs' First Amendment Right**
**To Freedom of Speech**
**(42 U.S.C. § 1983)**

224. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–223 of this Complaint.

225.   Speech is entitled to comprehensive protection under the First Amendment.

226.   Religious and political speech are fully protected by the First Amendment.

227.   The First Amendment rights of free speech and expression extend to campuses of state universities.

228.   The sidewalks and open spaces of KSU's campus are designated public fora—if not traditional public fora—for speech and expressive activities by students enrolled at KSU.

229.   A public university's ability to restrict speech—particularly student speech—in a public forum is limited.

230.   The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination in the public fora for student speech and expression on the campus of a public university.

231.   The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion or restriction of student speech based on its content or viewpoint.

232.   The Free Speech Clause of the First Amendment protects speech that is controversial, provocative, challenging, or offensive.

233.   The First Amendment prohibits the government from restricting speech because it might offend, disturb, or discomfort the sensibilities of

listeners or because listeners or government officials find it controversial, offensive, disturbing or discomforting. Any governmental attempts to do so are inherently content and/or viewpoint based, regardless of the government's motives for such restrictions.

234.  The First Amendment prohibits the government from charging a speaker security fees based on the content or viewpoint of his speech, which includes how others might respond to that speech.

235.  The First Amendment's Free Speech Clause prohibits censorship of religious and political expression.

236.  Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

237.  Thus, the government may not regulate speech based on policies that permit arbitrary, discriminatory, or overzealous enforcement or that grant officials unbridled discretion to discriminate against speech based on its content or viewpoint.

238.  Unbridled discretion to discriminate against speech based on its content or viewpoint violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

239.  In addition, any content- or viewpoint-based prior restraint must

include a requirement that government officials decide whether or not to grant a permit within a specified, brief time period and must include an avenue to appeal an adverse decision.

240. The government may not regulate speech based on overbroad policies that encompass a substantial amount of constitutionally protected speech.

241. The government also may not regulate speech based on policies that are vague.

242. The First Amendment's Free Speech Clause also guarantees a citizen the right to express his views spontaneously.

243. Defendants' *Speech Zone Policies* run afoul of these clearly established constitutional principles in a number of ways, causing them to violate the First Amendment facially and as-applied.

244. First, Defendants' *Speech Zone Policies* require officials to evaluate the content and viewpoint of the expression in which students desire to engage on campus when deciding whether to approve or reject a reservation request, when deciding whether an event is "controversial," and when deciding whether and how much to charge in fees for security and medical assistance.

245. Defendants engaged in content and viewpoint discrimination when they applied their *Speech Zone Policies* to require Ratio Christi to conduct two pro-life displays in the "speech zone."

246. Second, Defendants' *Speech Zone Policies* confer unbridled discretion upon KSU officials to discriminate against student speech based on its content or viewpoint.

247.   These grants of unbridled discretion to KSU officials violate the First Amendment because they create a system in which speech is reviewed without any standards, thus giving students no way to prove that a denial, restriction, or condition upon their speech was based on unconstitutional considerations.

248.   Because Defendants have failed to establish neutral, objective, and comprehensive criteria governing each of the decisions listed above, there is a substantial risk that KSU officials will engage in content and viewpoint discrimination when reviewing reservation requests.

249.   Defendants exercised the unbridled discretion granted them under their *Speech Zone Policies* when they twice refused to let Ratio Christi conduct its pro-life displays in Zone 2 of the Campus Green and allowed those displays to occur only in the "speech zone."

250.   Third, Defendants' *Speech Zone Policies*, which require RSOs to obtain a permit from University officials to reserve space on campus, are unconstitutional prior restraints in areas of campus that are traditional or designated public fora for KSU students.

251.   Fourth, Defendants' *Speech Zone Policies* restrict RSO's ability to engage in spontaneous expression and to respond to breaking news on campus.

252.   Fifth, Defendants' *Speech Zone Policies* are unconstitutionally vague and overbroad because they restrict a significant amount of constitutionally protected speech.

253.   The overbreadth of Defendants' *Speech Zone Policies* chills the speech of Plaintiffs, who seek to engage in protected expression in the open, outdoor

areas of campus and to engage in expression on campus that some might find "controversial."

254.   Defendants' *Speech Zone Policies* unconstitutionally censor all private speech that KSU officials find controversial.

255.   Defendants' *Speech Zone Policies* do not satisfy strict scrutiny because they support no compelling government interest and they are not narrowly tailored to meet any such concerns.

256.   Defendants' *Speech Zone Policies* violate Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

257.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, irreparable harm. They are entitled to an award of nominal and compensatory damages and equitable relief.

258.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their freedom of speech and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of Plaintiffs' First Amendment Right To Freedom of Expressive Association (42 U.S.C. § 1983)

259.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–223 of this Complaint.

260.   The First Amendment protects the right of all citizens to associate

freely with people of their choice without interference from the Government.

261.   The First Amendment protects equally the choice to associate and the choice to not associate with people.

262.   The First Amendment recognizes that forcing a group of citizens to accept as a member someone who opposes the mission and message of that group undercuts the group's ability to express its chosen message.

263.   Defendants' *Speech Zone Policies* violate the right to free association of individual students, including Mr. Bohannon, by requiring these students to associate with at least four other students (and complete other requirements to form an RSO) to reserve space on campus for expressive activities.

264.   Defendants' *Speech Zone Policies* and associated practices violate Plaintiffs' right to expressive association as guaranteed by the First Amendment to the United States Constitution.

265.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiffs are entitled to an award of nominal damages, compensatory damages, and equitable relief.

266.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their freedom of association and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Violation of Plaintiffs' Right to be Free from**
**Unconstitutional Conditions**
**(42 U.S.C. § 1983)**

267.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–223 of this Complaint, as if set forth fully herein.

268.   The United States Constitution prohibits the government from placing a condition on the receipt of a benefit that infringes upon the recipient's constitutional rights, even if the government has no obligation to provide that benefit in the first place.

269.   The United States Constitution also prohibits the government from conditioning the exercise of certain constitutional rights on a citizen's agreement to surrender other constitutional rights.

270.   Defendants' *Speech Zone Policies* impose an unconstitutional condition upon both a student's right to speak freely in the public fora on campus and his receipt of state benefits (*i.e.*, access to the public fora on campus).

271.   Defendants' *Speech Zone Policies* require individual students to form an RSO and associate with at least four other students in order to reserve space on campus.

272.   Using their *Speech Zone Policies*, Defendants imposed an unconstitutional condition on Ratio Christi when they offered to let it conduct its 2016 pro-life display in Zone 2 if it agreed to remove certain components of its display to suit the preferences of KSU officials and to render the display "noncontroversial" in the eyes of those officials.

273.   Because of Defendants' actions, Plaintiffs have suffered, and continue

to suffer, irreparable harm. They are entitled to an award of nominal and compensatory damages and equitable relief.

274.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their right to be free from unconstitutional conditions and their freedom of speech and to an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
### Violation of Plaintiffs' Fourteenth Amendment Right to Due Process of Law
#### (42 U.S.C. § 1983)

275.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–223 of this Complaint, as if set forth fully herein.

276.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to due process of law and prohibits Defendants from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination in Defendants' handling of Plaintiffs' speech.

277.   The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

278.   The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

279.   The government may not regulate speech in ways that provide

44

unbridled discretion to prohibit or restrict speech.

280.   The government also may not regulate speech in ways that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

281.   Defendants' *Speech Zone Policies* contain no objective criteria to guide administrators when applying the policies to RSOs' reservation requests.

282.   Defendants enforced their vague *Speech Zone Policies* when they twice refused to let Ratio Christi conduct its pro-life displays in Zone 2 of the Campus Green and allowed those displays to occur only in the "speech zone."

283.   Defendants' *Speech Zone Policies* are impermissibly vague and ambiguous. Thus, they are incapable of providing meaningful guidance to Defendants and other KSU officials, and they force students to guess as to whether expression that the First Amendment protects is in fact allowed on campus.

284.   The lack of criteria, factors, or standards in Defendants' *Speech Zone Policies* renders these policies and practices unconstitutionally vague and in violation of Plaintiffs' right to due process of law under the Fourteenth Amendment.

285.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm. They are entitled to an award of nominal and compensatory damages and equitable relief.

286.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to due process of law and an injunction against Defendants' policies and actions.

Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION
### Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection Under the Law
### (42 U.S.C. § 1983)

287.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–223 of this Complaint, as if set forth fully herein.

288.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law and prohibits Defendants from promulgating and employing standards that permit disparate treatment of similarly situated individuals.

289.   The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

290.   Ratio Christi is similarly situated to other RSOs at KSU.

291.   In applying their *Speech Zone Policies*, Defendants have allowed other RSOs to express viewpoints that many find controversial outside of the "speech zone," but they repeatedly refused to let Ratio Christi do the same.

292.   When government regulations, like Defendants' *Speech Zone Policies*, infringe on fundamental rights, discriminatory intent is presumed.

293.   Defendants' *Speech Zone Policies* have also been applied to discriminate intentionally against Plaintiffs' rights to freedom of speech, right to be free from compelled speech, and right to be free from unconstitutional conditions.

294.   Defendants' *Speech Zone Policies* are underinclusive, restricting some speech while leaving other speech equally harmful to the University's asserted interests unrestricted.

295.   Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiffs.

296.   Defendants' *Speech Zone Policies* are not narrowly tailored as applied to Plaintiffs because Plaintiffs' speech does not implicate any of the legitimate interests Defendants might have.

297.   Defendants applied their *Speech Zone Policies* to Ratio Christi in a discriminatory and unequal manner, allowing some RSOs to speak freely on controversial issues throughout the Campus Green when Defendants say that Ratio Christi cannot do the same, in violation of Ratio Christi's right to equal protection of the laws under the Fourteenth Amendment.

298.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, irreparable harm. They are entitled to an award of nominal and compensatory damages and equitable relief.

299.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to equal protection of the law and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A. A declaratory judgment that Defendants' *Speech Zone Policies* and associated practices violate Plaintiffs' rights under the First Amendment facially and as-applied;

B. A declaratory judgment that Defendants' *Speech Zone Policies* and associated practices violate Plaintiffs' rights under the Fourteenth Amendment facially and as-applied;

C. A preliminary and permanent injunction prohibiting the Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing their *Speech Zone Policies*;

D. Compensatory and nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights from the Defendants sued in their individual capacities;

E. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

F. All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this the 20th day of February, 2018.

BLAKE MEADOWS*
Georgia Bar No. 569729
**ALLIANCE DEFENDING FREEDOM**
440 1st Street, NW, Ste. 600
Washington, D.C. 20001
Telephone: (202) 393–8690
Facsimile: (202) 347–3622
bmeadows@ADFlegal.org

TYSON C. LANGHOFER**
Arizona Bar No. 032589
**ALLIANCE DEFENDING FREEDOM**
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444–0020
Facsimile: (480) 444–0024
tlanghofer@ADFlegal.org

*/s/ Travis C. Barham*
DAVID A. CORTMAN
Georgia Bar No. 188810
TRAVIS C. BARHAM
Georgia Bar No. 753251
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Rd. NE,
Suite D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

\* Application for admission submitted.
\*\* Application for admission *pro hac vice* to be submitted.

*Attorneys for Plaintiffs*

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury for all issues so triable herein.

*/s/ Travis C. Barham*
TRAVIS C. BARHAM
*Attorney for Plaintiffs*

## DECLARATION UNDER PENALTY OF PERJURY

I, ZACHARY BOHANNON, a citizen of the United States and a resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge. However, I do not have personal knowledge of the events verified by Sarah McCuan and K.B, a minor, and thus cannot verify those portions of the Complaint.

Executed this __15__ day of February, 2018, at Kennesaw Georgia.

ZACHARY BOHANNON

50

## DECLARATION UNDER PENALTY OF PERJURY

I, ZACHARY BOHANNON, Reservations Delegate of Ratio Christi at KSU, a citizen of the United States, and a resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge. However, I do not have personal knowledge of the events verified by Sarah McCuan and K.B., a minor, and thus cannot verify those portions of the Complaint.

Executed this _15_ day of February, 2018, at Kennesaw Georgia.

ZACHARY BOHANNON
Reservations Delegate
Ratio Christi of KSU

## DECLARATION UNDER PENALTY OF PERJURY

I, K.B., a minor, a citizen of the United States, and a resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing paragraphs regarding Defendant Olen's defense of Defendants' *Speech Zone Policies* and their application to Ratio Christi, that those paragraphs are true and correct to the best of my knowledge, that they are based on my personal knowledge.

Executed this 15th day of February, 2018, at Kennesaw Georgia.



K.B.

## DECLARATION UNDER PENALTY OF PERJURY

I, SARAH MCCUAN, a citizen of the United States and a resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing paragraphs regarding the history of Defendants' speech zones, Ratio Christi's 2015 display, and Defendants' enforcement of their *Speech Zone Policies* against Ratio Christi in 2016, that those paragraphs are true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that they are based on my personal knowledge.

Executed this 19th day of February, 2018, at Kennesaw Georgia.


Sarah McCuan
SARAH MCCUAN